**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

| | |
|---|---|
| In re<br><br>**DOUGLAS A. SAAREL** and<br>**SUSANN E. SAAREL**,<br><br>    Debtors. | Case No. **08-61684-11** |

***MEMORANDUM of DECISION***

  At Butte in said District this 2nd day of July, 2009.

  In this Chapter 11 bankruptcy, after due notice, a hearing was held June 22, 2009, in Butte on: (1) the Motion to Modify Stay filed by Brian Gorman, Carolyn Dunn Gorman, SHAK Properties, LLC, Dennis Slonaker, Christian A. Terfloth and Carolyn M. Newsom (collectively "the Gorman Group") on March 16, 2009 (docket entry no. 32); (2) the Motion to Dismiss filed April 14, 2009, by Brian Gorman, Carolyn Dunn Gorman, SHAK Properties, LLC, Dennis Slonaker, Christian A. Terfloth, Carolyn M. Newsom, Richard D. Wallace, Daryl Purdy, and Rocky Mountain Concrete, Inc., Employee Profit Sharing and Trust, Richard D. Wallace, Trustee (docket entry no. 65); (3) the Motion to Modify Stay filed March 16, 2009, by Rocky Mountain Concrete, Inc., Employee Profit Sharing Plan and Trust, Richard D. Wallace Trustee ("RMC") (docket entry no. 34), together with the Amended Motion to Modify Stay filed by the same said creditor on May 28, 2009 (docket entry no. 96); (4) the Motion to Modify Stay filed by John V. Stoneman ("Stoneman") on March 19, 2009 (docket entry no. 39); and (5) the Motion to Modify Stay filed by Richard Wallace and Daryl Purdy ("Wallace/Purdy") on March 16, 2009 (docket

1

entry no. 36). Attorney James A. Patten ("Patten") of Billings, Montana, represented the Debtors at the hearing. Attorney James J. Screnar ("Screnar") of Bozeman, Montana represented the moving creditors. Debtor Douglas A. Saarel ("Saarel"), Richard Wallace and Brian Gorman testified, as did appraisers Pard Cummings ("Cummings") and Randy K. Roberston ("Robertson") regarding the value of the moving creditors' collateral, which consists of unimproved acreage. RMC's Exhibits 1a, 1b, 1c, 1d, 1e, Stoneman's Exhibits 2a, 2b, 2c, 2d, 2e, Wallace/Purdy's Exhibits 3a, 3b, 3c, 3d, the Gorman Group's Exhibits 4a, 4b, 4c, 4d, and Debtors' Exhibits A, B and C were admitted into evidence without objection. After the conclusion of the parties' cases-in-chief the Debtors requested permission to submit a post-hearing brief. The Court granted the parties through July 1, 2009, to file simultaneous post-hearing briefs. The deadline for filing briefs has expired and the motions are now ready for decision. After review of the record and applicable law, and for the reasons set forth below, the creditors' motions to modify stay will, by separate Orders, be granted as to Wallace/Purdy and the Gorman Group and denied as to RMC and Stoneman.

This Court has original and exclusive jurisdiction of this Chapter 11 bankruptcy case under 28 U.S.C. § 1334(a). The contested motions to modify stay are core proceedings under 28 U.S.C. § 157(b)(2)(G). This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law.

**FACTS**

Debtors filed a voluntary Chapter 11 bankruptcy petition on July 30, 2001, thereby commencing Case No. 01-22283. The Debtors' disclosure statement in that case was approved on July 24, 2002, and the Debtors' Chapter 11 plan was confirmed by Order entered that same

2

date. Case No. 01-22283 was closed on April 2, 2003.

Following the closure of Case No. 01-22283, Debtors executed four Promissory Notes, all dated July 20, 2006. The first Promissory Note in the amount of $236,600.00 was executed in favor of Stoneman. Stoneman's Promissory Note is secured by two parcels of real property, consisting of 38.636 acres and 20.631 acres, pursuant to Montana Trust Indentures dated July 20, 2006, as recorded in the Office of the Park County Clerk and Recorder at document numbers 337199 and 337200:

> Tract 1 of Certificate of Survey No. 1194, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and Recorder of Park County, Montana; and

> Tract 61 of Certificate of Survey No. 309, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and Recorder of Park County, Montana.

The payoff on the Stoneman Promissory Note as of June 16, 2009, was $257,276.85.

The second Promissory Note in the amount of $148,000.00 was executed in favor of Wallace/Purdy. The Wallace/Purdy Promissory Note is secured by real property, consisting of 19.901 acres, pursuant to a Montana Trust Indenture dated July 20, 2006, as recorded in the Office of the Park County Clerk and Recorder at document number 337201:

> Tract 54 of Certificate of Survey No. 308, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and recorder of Park County, Montana.

The payoff on the Wallace/Purdy Promissory Note as of June 16, 2009, was $161,314.31.

The third Promissory Note in the amount of $218,000.00 was executed in favor of RMC. RMC's Promissory Note is secured by two parcels of real property, consisting of 20.602 acres and 20.603 acres, pursuant to Montana Trust Indentures dated July 20, 2006, as recorded in the

Office of the Park County Clerk and Recorder at document numbers 337202 and 337203:

> Tract 2 of Certificate of Survey No. 1194, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and Recorder of Park County, Montana; and

> Tract 3 of Certificate of Survey No. 1994, Park County, Montana, according to the Official Plan thereof on file and of record if the Office of the County Clerk and Recorder of Park County, Montana.

The payoff on RMC's Promissory Note as of June 16, 2009, was $237,599.88.

Finally, the fourth Promissory Note in the amount of $148,000.00 was executed in favor of the Gorman Group. The Gorman Group's Promissory Note is secured by real property, consisting of 20.090 acres, pursuant to a Montana Trust Indenture dated July 20, 2006, as recorded in the Office of the Park County Clerk and Recorder at document number 337198:

> Tract 39 of Certificate of Survey No. 306, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and Recorder of Park County, Montana.

The payoff on the Gorman Group Promissory Note as of June 16, 2009, was $161,294.31.

All four Promissory Notes provide for interest at the rate of twelve percent per annum. Thus, interest accrues on Stoneman's Promissory Note at a rate of $77.79 per day; accrues on the Wallace/Purdy Promissory Note at a rate of $48.66 per day; accrues on RMC's Promissory Note at a rate of $71.67 per day; and accrues on the Gorman Group's Promissory Note at a rate of $48.66 per day. Each of the Promissory Notes calls for 47 consecutive interest only payments followed by a final interest and principal payment due July 20, 2010. The last interest payment made by the Debtors on the four Promissory Notes was September 18, 2008.

Debtors commenced the instant Chapter 11 bankruptcy on December 2, 2008. The Debtors filed a Chapter 11 Plan and Disclosure Statement on April 1, 2009. Debtors propose in

4

their Chapter 11 Plan to pay the moving creditors consisting of Stoneman, Wallace/Purdy, RMC and the Gorman Group within two years after the date of any order confirming Debtors' Chapter 11 plan, with interest accruing on the principal portion of any allowed claim at 4.25% per annum.

The moving creditors seek relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), arguing that they lack adequate protection in the real property that serves as security for the Promissory Notes. Debtors oppose the motions to modify stay, arguing that the moving creditors are adequately protected and that the underlying security is necessary for an effective reorganization. In their written objections, Debtors do not contest the allegations that they are in default and do not include an estimation of the value of the moving creditors' collateral.

As a result of this bankruptcy proceeding and in support of their motions to modify stay, the moving creditors retained Cummings to appraise the various parcels of property. Similarly, in preparation for the June 22, 2009, hearing, the Debtors hired Robertson to appraise all of Debtors' real property.

**Cummings' Appraisals – Exhibits 1e, 2e, 3d and 4d.**

Cummings has been an appraiser for approximately seventeen and one-half years, and has been appraising property in and around Gallatin county and Park county for fifteen years. Cummings testified that he has appraised 600 to 700 properties in the past two years. Cummings was hired by the moving creditors to perform appraisals of the six parcels of real property that are the subject of the pending motions to modify stay, and his appraisals were admitted into evidence as Exhibits 1e, 2e, 3d and 4d. Cummings did not speak with the Debtors while preparing his appraisals, and while Cummings has been on Debtors' property in the past, Cummings did not enter Debtors' property when preparing Exhibits 1e, 2e, 3d and 4d.

Cummings utilized the sales comparison approach in arriving at his valuation conclusions, and declined to use the cost approach or the income capitalization approach because no improvements and no income producing property exist on the subject parcels of property. Cummings' sales comparison approach considered 3 sales from 2008 for five of his six appraisals. On the sixth appraisal involving the 38.636 acre tract of land that serves as collateral for Stoneman's Promissory Note, Cummings considered 4 sales. All sales involved property that was located 4 miles or less from the subject properties.

Comparable 3 on all six appraisals is a 20.08 acre parcel of land located roughly 3.5 miles from each of the subject properties. Comparable 3 sold for $180,000 on January 17, 2008. Cummings adjusted the sales price of comparable 3 downward by $10,000 because comparable 3 has a well and electricity. None of the subject properties have electricity or a well. Cummings also adjusted the selling price of the comparables he used for the 20.631 acre tract of land that serves as collateral for Stoneman's Promissory Note and the 20.602 acre tract of land that serves as collateral for RMC's Promissory Note because the 20.631 acre tract and the 20.602 acre tract are subject to conservation easements that prohibit anyone from building on said tracts. Finally, Cummings adjusted the sales price of comparable 4 on the 38.636 acre tract of land that serves as collateral for Stoneman's Promissory Note downward by $20,000 because comparable 4 has "a good quality road, which leads to better access."

Based upon his review of the comparable sales, Cummings determined that the Wallace/Purdy collateral had a value range of $168,389 to $199,109. Cummings ultimately assigned a value of $184,000 to the property (or roughly $9,245 per acre), with a market exposure time of 12 months. Cummings determined that the value range for the Stoneman

6

collateral was $455,411 to $516,131.  Cummings ultimately assigned a value of $485,000 to the property (or roughly $8,183 per acre).  Cummings determined that the value range for RMC's collateral was $329,387 to $390,827.  Cummings ultimately assigned a value of $358,000 to the property (or roughly $8,688 per acre).  Finally, Cummings determined that the value range for the Gorman Group's collateral was $170,000 to $200,000.  Cummings ultimately assigned a value of $180,000 to the property (or roughly $8,959 per acre).

**Robertson's Appraisal – Exhibit A.**

Roberston was hired by the Debtors to perform an appraisal of Debtors' entire 478.834 acres of real property.  Roberston is a "general" appraiser who has been appraising property for 22 years.  Roberston does not generally appraise property in either Gallatin county or Park county.

In his appraisal, Robertson refers to Stoneman's collateral as Tract Three, Wallace/Purdy's collateral as Tract Six, RMC's collateral as Tract Two, and the Gorman Group's collateral as Tract One.  Robertson's appraisal is as of June 4, 2009.  Robertson has valued the Debtors' total property at $5,185,000.[1]  More specifically, Roberston values Stoneman's collateral at $11,000 per acre or $650,000, Wallace/Purdy's collateral at $12,000 per acre or $240,000, RMC's collateral at $11,000 per acre or $455,000.00 and the Gorman Group's collateral at $12,000 per acre or $240,000.  Robertson's valuation estimates are based upon a marketing time of 18 to 24 months.

The salient facts with respect to the various parcels of property at issue are summarized as follows:

---

[1] Debtors have the property listed for sale at a price in excess of $7 million.

| CREDITOR | PAYOFF AS OF 6/16/09 | CUMMINGS' VALUATION | ROBERTSON'S VALUATION | PER DIEM INTEREST |
|---|---|---|---|---|
| Stoneman | $257,276.85 | $485,000.00 | $650,000.00 | $77.79 |
| Gorman Group | $161,294.31 | $180,000.00 | $240,000.00 | $48.66 |
| RMC | $237,599.88 | $358,000.00 | $455,000.00 | $71.67 |
| Wallace/Purdy | $161,314.31[2] | $184,000.00 | $240,000.00 | $48.66 |

Like Cummings, Robertson used the sales comparison approach for his appraisal. Robertson used 6 comparable sales which are listed on page 18 of Exhibit A. Comparable 1 was a sale of 38.50 acres in Bozeman on December 12, 2008, and comparable 5 was a sale of 20.22 acres in Bozeman on August 7, 2007. Comparable 3 was a sale of 20.00 acres in Pray, Montana on October 24, 2008. Comparables 2, 4, and 6 are sales from the Livingston area, where Debtors' property is located, that occurred between May 10, 2007, and November 21, 2008. Comparables 2, 4 and 6 are parcels ranging in size from 20.00 acres to 23.04 acres. Robertson's appraisal shows that the sales from Bozeman and Pray yielded better data for Debtors' property values.

Robertson agreed on cross-examination that deducting $10,000 from a comparable property with electricity and a well was not unreasonable because Robertson testified that it was not out-of-line to spend $10,000 on a well. Roberston, however, disagreed with Cummings' deduction on two of Debtors' parcels for conservation easements. Robertson explained that in his opinion, conservation easements do not have an overall negative impact on value because they increase the value of other tracts.

---

[2] The payoff on the Promissory Notes is set forth in RMC's Exhibit 1d, Stoneman's Exhibit 2d, Wallace/Purdy's Exhibit 3c and the Gorman Group's Exhibit 4c. Debtors fail to explain why the Gorman Group and Wallace/Purdy Promissory Notes have differing payoff amounts, when the Promissory Notes are identical. The difference of $20.00 is in the interest calculation to June 16, 2009.

Also, Roberston testified that he looked at Cummings' comparable properties and decided not to use such properties because the access to Cummings' comparables was inferior to that of the subject properties and because there were inferior homes on the roads leading to Cummings' comparable properties.  According to Roberston, affluent people would not want to drive by junky property on the way to their "A" homes.  Roberston did agree though that there are "B" homes on the frontage road to the Debtors' property, and then "A" homes closer up to the Debtors' property.

Cummings disagreed that his comparables were inferior to the subject property and countered that he would not consider Robertson's comparables that were located in Bozeman or Pray.  For instance, Robertson's comparable in Pray, Montana is located in a valley that is in close proximity to Chico Hot Springs and is considerably closer to Yellowstone National Park.  Debtors' property, on the other hand, is mountainous terrain property located on a pass between Bozeman (Gallatin county) and Livingston (Park county).  Cummings would also not consider using comparables that were in the Jackson Creek area, such as Robertson's Comparable One because that property is closer to Bozeman and the Bridger Bowl ski area and because that area contains predominantly higher valued homes.

## APPLICABLE LAW

The commencement of a case under the Bankruptcy Code generally stays any and all proceedings against debtors.  11 U.S.C. § 362(a); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990).  The importance of the automatic stay is discussed in the legislative history of § 362:

The automatic stay is one of the fundamental debtor protections provided by the

>bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95-595, 95th Cong. 1st Sess. 340-42 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 54-55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787 at 5840-41 and 6296-97.

The fundamental debtor protections afforded by § 362(a), however, are not absolute. 11 U.S.C. 362(d). As explained in § 362(d):

>On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
>>(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

Except for the issue of a debtor's equity in property, in a proceeding on a motion to modify the automatic stay, the debtor has the burden of proof to show that the stay should not be modified or annulled. *In re National Envtl. Waste Corp.*, 191 B.R. 832, 836 (Bankr. C.D.Cal. 1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); *In re Syed*, 238 B.R. 126, 132 (Bankr. N.D.Ill. 1999); *In re Sauk Steel Co., Inc.*, 133 B.R. 431, 436 (Bankr. N.D.Ill. 1991); 11 U.S.C. § 362(g).

As noted above, § 362(d)(1) allows a court to grant relief from the automatic stay for cause, "including the lack of adequate protection." What constitutes adequate protection for purposes of § 362(d)(1) is not defined in the Bankruptcy Code. However, "11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent." *Pistole v. Mellor (In re Mellor)*, 734

F.2d 1396, 1400 (9th Cir. 1984). This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D.Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.').''

[*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984).''

11

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made. *In re Curtis*, 9 B.R. at 111.

*Id. See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.) The *Mellor* Court defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400 n.2.

Section 362 vests this Court with wide latitude in granting appropriate relief from the automatic stay, and a decision to lift the automatic stay is within a bankruptcy court's discretion, and subject to review for an abuse of discretion. *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

## DISCUSSION

The instant case presents the opinions on the value of six parcels of property by two

appraisers, Cummings and Robertson. As between Cummings' and Robertson's appraisals, the Court first notes that neither Cummings nor Roberston were compelling witnesses. Cummings and Roberston both used the sales comparison approach and both considered numerous comparable properties. However, after listening to Cummings and Roberston testify and after carefully reviewing their appraisal reports, the Court concludes that Cummings' appraisals are more persuasive, more accurately reflect current market conditions and are thus entitled to greater weight.

The secured creditors' motions to modify stay each contend that the Debtors are in default on payments due under the Promissory Notes since September of 2008. The Debtors' objections do not contest those contentions, and therefore, the Court finds that the Debtors are in default on post-petition payments owed to the secured creditors.

Next, the Court finds that the Debtors' objections to the secured creditors' motions fail to comply with the requirements of Mont. LBR 4001-1(b)(1) and (b)(3). Local Rule 4001-1(b) requires in pertinent part:

> The response and request for hearing must contain the following:
>
> > (1) If the valuation of property is an issue, the estimation of value asserted by the respondent.
>
> > \* \* \* \*
>
> > (3) If the respondent proposes to offer adequate protection, it must state with specificity the adequate protection offered to be provided (e.g., periodic payments, substitute liens, or other indubitable equivalents).

The Debtors' objections fail to set forth Debtors' estimation of value as required by LBR 4001-1(b)(1). In their objections, Debtors state that they "have equity in the collateral[,]" but that

13

is not responsive and does not satisfy the requirement of LBR 4001-1(b)(1). Debtors also do not offer to pay any adequate protection in their objections as required by Mont. LBR 4001-1(b)(3). That requirement is to be satisfied in a response that notices a contested motion for hearing, not "in the event this Court determines there is not an adequate equity cushion" after a hearing. In addition, the Court finds that the Debtors offered no evidence at the hearing of any proposed adequate protection payments to the secured creditors. The Debtors similarly offered no evidence that they have the ability to make any adequate protection payments to the creditors. The Court thus finds that Debtors' skeletal objections do not comply with LBR 4001-1(b)(1) and (b)(3).

Notwithstanding the inadequacy of Debtors' objections, the Court turns to the merits of the motions now before the Court. As the party seeking relief, the moving creditors must first establish a *prima facie* case that cause exists for relief under § 362(d)(1). *In re Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (9th Cir. BAP 1996). Once a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is not warranted. § 362(g)(2). *Id.*

The appraisals done by both Cummings and Roberston show that Debtors have equity in their property. The issue is thus whether the moving creditors are adequately protected by Debtors' equity cushions in the various parcels of real property.

The payoff on Stoneman's Promissory Note as of June 16, 2009, was $257,276.85. Cummings appraises Stoneman's collateral at $485,000.00 with a market exposure period of 12 months. The Court finds that Debtors' equity in Stoneman's collateral is more than adequate to protect Stoneman's secured interest at the present time. Similarly, the payoff on RMC's

Promissory Note as of June 16, 2009, was $237,599.88.  Cummings appraises RMC's collateral at $358,000.00.  As with Stoneman, the Court finds that Debtors' equity in RMC's collateral is more than adequate to protect RMC's secured interest at this time.  Given Debtors' significant equity cushion in Stoneman's and RMC's collateral, the Court finds that Stoneman and RMC have not shown that cause exists for relief under § 362(d)(1).

By contrast, the Court does not view the balances resulting from Cummings' valuations of the Gorman Group's and Wallace/Purdy's collateral as sufficient equity cushions to constitute adequate protection for their claims.  First, the Debtors have offered no proof of adequate protection payments, and offered no proof of ability to make any adequate protection payments that could preserve any equity cushion.  Second, if Cummings' valuations are correct, the secured creditors are oversecured and thereby entitled under 11 U.S.C. § 506(b) to interest on their claims plus reasonable fees and costs.  The Debtors, as the party with the burden of proof, failed to offer any evidence or provision for payment of these additional components of the Gorman Group's and Wallace/Purdy's claims, and thereby failed their burden under § 362(g)(2) to show that the stay should not be lifted for cause under § 362(d)(1).

Turning to the appraisals, the Court begins by noting that Cummings and Roberston both used the same approach when preparing their appraisals, namely, the sales comparison approach.  The primary disagreement between Cummings and Roberston is the appropriate comparables to use in reaching their opinion of valuation.  Debtors argue that Cummings' appraisals suffer "from numerous defects[.]"  Debtors first argue that Cummings misstated the acreage of his comparable sale 1 identified as "MLS Doc # 147912."  Roberston testified that he contacted the listing agent of MLS Doc # 147912 and was told that the property was actually 13.303 acres rather than 20

15

acres. Roberston's testimony on this point is hearsay. Debtors also introduced into evidence Exhibit B which is MLS Doc # 147912. Exhibit B shows that MLS Doc # 147912 discloses the number of acres as 13.303 and also discloses the approximate lot size as 20 acres. Exhibit B is inconsistent on its face, and is not inconsistent with Cummings' appraisal. However, Debtors argue that Cummings conceded that his appraisals were wrong in light of MLS Doc # 147912. Cummings made no such concession. Cummings testified that if the property identified in MLS Doc #147912 was indeed 13.303 acres rather than 20 acres, that his per acre price for Debtors' properties would increase.

Next, Debtors argue that the access to the comparable sales used by Cummings is inferior to Debtors' property, as evidenced from the fact that Cummings' comparable sales are, according to debtor Douglas Saarel, at a higher elevation than Debtors' properties. Cummings comparable sales are all mountainous terrain properties located in the Bozeman Pass area, which is also where the Debtors' properties are located. By contrast, Roberston used comparable sales that were admittedly much lower than Debtors' property in elevation, and were located in a valley, as opposed to the mountains. Debtors' arguments against Cummings' appraisals simply are not persuasive. In this Court's view, Cummings used better comparable sales.

The determination of the weight to be given expert testimony or evidence is a matter within the discretion of the trier of fact – which in a bench trial like the instant case is the Bankruptcy Court. *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990); *Arkwright Mutual Insurance Co. v. Gwinner Oil Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997); Barry Russell, *Bankruptcy Evidence Manual*, 2000 Ed., § 702.2; 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 702.05[2][a] (2nd ed. 2002).

16

In this case, Debtors have an $18,705.69 equity cushion in the Gorman Group's collateral, which equates to an equity cushion of roughly 11%. Debtors have an equity cushion of $22,685.69 in Wallace/Purdy's collateral, which equates to an equity cushion of roughly 13%. While an equity cushion of 11 or 13% may at first blush appear adequate, in this case, that equity cushion could quickly be eroded by accruing interest. For example, the Wallace/Purdy Promissory Note accrues interest at the rate of $17,760.00 per year. Thus, as of June 16, 2010, the amount owed on the Promissory Note, not including fees or costs, will be $179,074.31, thereby reducing Debtors' equity cushion to a mere 3%. Given Debtors lack of any provision for payment of adequate protection payments, the Court finds that an insufficient equity cushion exists in the Gorman Group's collateral and in the Wallace/Purdy collateral to constitute adequate protection, and finds that a risk of economic harm to the Gorman Group and Wallace/Purdy arises from further delay in allowing them to recover from their collateral.

Together with the Debtors' default to the Gorman Group and Wallace/Purdy in post-petition payments, the Court concludes that Debtors have failed to satisfy their burden of proof under § 362(g)(2) that the stay should be lifted for cause under § 362(d)(1). *Avila,* 311 B.R. at 84. Having found and concluded that Debtors failed to satisfy their burden of proof to show that relief from the stay should not be granted, the Court exercises its broad discretion and grants the Gorman Group and Wallace/Purdy relief from the automatic stay. *Mataya v. Kissinger*, 72 F.3d at 108-109.

Granting relief from the automatic stay returns the parties to the legal position which they enjoyed prior to the imposition of the stay. *In re Johnson*, 17 Mont. B.R. 318, 319 (Bankr. D. Mont. 1999); *Estate of B.J. McAdams v. Ralston Purina Co.*, 154 B.R. 809, 812 (N.D. Ga. 1993).

17

Thus, while the Court has flexibility in determining whether to grant the moving creditors' motions to modify stay, by granting the motions, the Debtors retain whatever claims, defenses and remedies they may have in a nonbankruptcy forum.

The Court would note that the moving creditors offered no evidence to support their pending Motion to Dismiss filed April 14, 2009. Accordingly, that motion is denied for lack of proper prosecution and for lack of evidence.

Consistent with the foregoing, the Court will enter separate orders providing as follows:

**IT IS ORDERED**:

1. The Motion to Modify Stay filed by Brian Gorman, Carolyn Dunn Gorman, SHAK Properties, LLC, Dennis Slonaker, Christian A. Terfloth and Carolyn M. Newsom on March 16, 2009 (docket entry no. 32), is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Brian Gorman, Carolyn Dunn Gorman, SHAK Properties, LLC, Dennis Slonaker, Christian A. Terfloth and Carolyn M. Newsom to pursue their non bankruptcy remedies against the following property of the estate:

> Tract 39 of Certificate of Survey No. 306, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and Recorder of Park County, Montana

2. The Motion to Dismiss filed April 14, 2009, by Brian Gorman, Carolyn Dunn Gorman, SHAK Properties, LLC, Dennis Slonaker, Christian A. Terfloth, Carolyn M. Newsom, Richard D. Wallace, Daryl Purdy, and Rocky Mountain Concrete, Inc., Employee Profit Sharing and Trust, Richard D. Wallace, Trustee (docket entry no. 65), is DENIED.

3. The Motion to Modify Stay filed March 16, 2009, by Rocky Mountain Concrete, Inc., Employee Profit Sharing Plan and Trust, Richard D. Wallace Trustee (docket entry no. 34),

together with the Amended Motion to Modify Stay filed by the same said creditor on May 28, 2009 (docket entry no. 96), are DENIED.

  4. The Motion to Modify Stay filed by John V. Stoneman on March 19, 2009 (docket entry no. 39), is DENIED.

  5. The Motion to Modify Stay filed by Richard Wallace and Daryl Purdy on March 16, 2009 (docket entry no. 36), is GRANTED; and the stay afforded by § 362(a) of the Bankruptcy Code is modified to permit Richard Wallace and Daryl Purdy to pursue their non bankruptcy remedies against the following property of the estate:

> Tract 54 of Certificate of Survey No. 308, Park County, Montana, according to the Official Plat thereof on file and of record in the Office of the County Clerk and recorder of Park County, Montana.

      BY THE COURT

      /s/ Ralph B. Kirscher
      HON. RALPH B. KIRSCHER
      U.S. Bankruptcy Judge
      United States Bankruptcy Court
      District of Montana